**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>TREMONT CHICAGO, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 24-10844 (LSS)<br><br>Re: D.I. 13 |

**PRELIMINARY OBJECTION OF LMREC IV NOTE HOLDER, INC. TO DEBTOR'S CASH COLLATERAL MOTION**

LMREC IV NOTE HOLDER, INC. ("LMREC"), as senior secured lender to the Debtor, files this preliminary objection to the *Emergency Motion Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 for Interim and Final Orders: (1) Authorizing Use of Cash Collateral; (2) Scheduling Final Hearing; and (3) For Related Relief* (D.I. 13) (the "Cash Collateral Motion"),[2] and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. With the Debtor in default under the Loan since at least October 2020, and after indulging the Debtor's many failed attempts to remedy its defaults, LMREC began foreclosure proceedings against the Debtor in September 2023. While the foreclosure proceedings were pending, LMREC filed a motion for the appointment of designated receivers, seeking emergency relief to allow LMREC to protect the property due to, among other things, Debtor's failure to pay for labor performed on the property, which led to mechanics' lien claims being filed against the property, and the failure to pay significant outstanding utility bills, including a water bill that exceeds $680,000.

---

[1] The last four digits of the Debtor's federal tax identification number are 5403. The location of the Debtor's operations is 100 E. Chestnut St., Chicago, IL 60611.

[2] Capitalized terms not defined herein are used as defined in the Cash Collateral Motion.

2. During the April 22, 2024, hearing on the appointment of receivers, the Debtor informed the presiding Illinois judge and LMREC that it had filed bankruptcy in Delaware to stay the proceedings. The Debtor then waited almost a week before filing first day motions, yet it now seeks the "emergency" nonconsensual use of LMREC's cash collateral.

3. Although LMREC is willing to consent to the limited use of its cash collateral to protect the property and ensure that it remains safe for the individuals currently residing in the property, LMREC does not consent to the Debtor's proposed budget that grants it virtually unfettered use of the cash collateral. The Debtor has repeatedly breached the Loan Agreement (defined below), appears to have converted LMREC's cash collateral to pay prepetition retainers, and has caused a serious deterioration in the value of the property and LMREC's collateral. Moreover, the Debtor did not discuss its proposed budget with LMREC before filing the Cash Collateral Motion—including its proposed unlimited priming use of LMREC's cash collateral for the Debtor's professional fees.

4. Because LMREC does not consent to use of its cash collateral, the Debtor must prove that LMREC is adequately protected for every dollar the Debtor seeks to use in this case. The Debtor cannot meet this burden. Contrary to controlling precedent, the only adequate protection the Debtor offers is replacement liens in LMREC's existing collateral. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564–65 (3d Cir. 1994) (adequate protection requires that the lender be offered "new consideration"). But the Third Circuit was clear in *Swedeland* that providing a secured creditor with replacement liens in its pre-existing collateral is not adequate protection. *See id.* at 565, 567 (lender is not adequately protected when all it is offered is replacement liens in existing collateral).

5. The Debtor will assert that LMREC is adequately protected because it will "replenish" the cash collateral it consumes during the case with future rents—which are also LMREC's collateral. This theory of adequate protection, that a debtor may adequately protect a secured party's interest in rents by giving a replacement lien in future rents has been rejected by "virtually every case addressing this issue" and it should be rejected by this Court. *See Putnal v. SunTrust Bank*, 489 B.R. 285, 290 (M.D. Ga. 2013); *Stearns Building v. WHBCF Real Estate (In re Stearns Building)*, 165 F.3d 28, 1998 WL 661071, at *5, (6th Cir. Sept. 3, 1998) (internal citation omitted)(" [A] diversion of any portion of the rents to a party other [than] the secured party is clearly a diminution of the secured party's interests in the assignment of rents portion of the security . . . Therefore, this court cannot accept that the use of future rents to replace the expenditure of the prior months rents somehow provides adequate protection for the secured party.").

6. Because the Debtor cannot provide LMREC with adequate protection with a replacement lien in its existing collateral, the Debtor is left with the argument that it hopes that chapter 11 will lead to a presently unknown value maximizing transaction. Whatever the merits are of this latest strategy, it legally is insufficient to permit the nonconsensual use of LMREC's cash collateral under *Swedeland*. *See Swedeland*, 16 F.3d at 567 ("Congress did not contemplate that a creditor could find its priority position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects.").

7. The Cash Collateral Motion should be denied.

3

**BACKGROUND**

**I.    LMREC holds a valid, perfected, first-priority lien on all the Debtor's assets.**

8.    The Debtor and LMREC IV Holdings I, Inc. ("Holdings"), entered into that certain Loan Agreement (the "Loan Agreement") dated as of June 7, 2018, under which Holdings agreed to lend $19,425,000 (the "Loan") to the Debtor.  A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.  At the same time, the Debtor executed that certain Promissory Note dated June 7, 2018, payable to Holdings in the face amount of $19,425,000 (the "Note").  A true and correct copy of the Note is attached hereto as **Exhibit B**.

9.    Holdings subsequently assigned its interests under the Loan Agreement and other Loan Documents (defined below) to LMREC, through that certain Assignment of Mortgage, Security Agreement and Financing Statement and Other Loan Documents, by and between Holdings and LMREC, executed and recorded with the Cook County Recorder of Deeds on April 10, 2019, as Document No. 1910057108 (the "Assignment of Loan Documents").  A true and correct copy of the Assignment of Loan Documents is attached hereto as **Exhibit C**.

10.    LMREC's collateral for the Loan consists of all the Debtor's assets, including: the Tremont Hotel and all improvements, equipment, and fixtures thereon; all the Debtor's personal property, including all contracts, leases, and rents; all insurance policies; all trademarks, general intangibles, and accounts; and all proceeds of the foregoing.  *See* Mortgage § 1.1.

11.    To secure the Loan, the Debtor and LMREC are also party to that certain Mortgage, Security Agreement and Financing Statement dated June 7, 2018, and recorded with the Cook County Recorder of Deeds on June 13, 2018, as Document No. 1816406104 (the "Mortgage").  A true and correct copy of the Mortgage is attached hereto as **Exhibit D**.  The

Mortgage grants LMREC a perfected first-priority security interest in the Mortgaged Property, and secures the Loan debt evidenced by the Note.  The "Mortgaged Property" consists of the real property and improvements described in the Mortgage, including that certain property commonly known as the Tremont Hotel, 100–108 E. Chestnut Street & 838 N. Ernst Court, Chicago, Illinois 60611.  *See* Mortgage Ex. "A", at 1.

12. The Mortgage also creates and perfects a security interest in, among other things, the "Leases" and "Rents" associated with the Mortgaged Property.  "Leases" are defined to include "[a]ll leases . . . or other agreements . . . pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, by or on behalf of [the Debtor], . . . whether before or after the filing by or against [the Debtor] of any petition for relief under [the Bankruptcy Code] . . . ."  Mortgage § 1.1(i). "Rents" are defined to include "all rents . . . , rent equivalents, . . . income, receivables, receipts, revenues . . . received by or paid to or for the account of or benefit of [the Debtor]. . . from any and all sources arising from or attributable to the Property, . . . whether paid or accruing before or after the filing by or against [the Debtor] of any petition for relief under the Bankruptcy Code . . . ."  *Id.*

13. The Debtor and LMREC are also party to that certain Assignment of Rents dated June 7, 2018, recorded with the Cook County Recorder of Deeds on June 13, 2018, as Document No. 1816406105 (the "<u>Assignment of Rents</u>").  A true and correct copy of the Assignment of Rents is attached hereto as **Exhibit E**.

14. In the Assignment of Rents, as security for the Loan, the Debtor "absolutely and unconditionally assigns and grants" to LMREC the "property, rights, interests and estates, now owned, or hereafter acquired by [the Debtor]," which includes, among other things, the "Leases",

5

"Rents" and "Proceeds." Assignment of Rents § 1.1. "Leases" are defined to include "all agreements . . . affecting the use, enjoyment or occupancy of the Property . . . whether made before or after the filing by or against [the Debtor] of any petition for relief under [the Bankruptcy Code] . . . ." *Id.* at § 1.1(a). "Rents" are defined to include "[r]ents paid or accruing before or after the filing by or against [the Debtor] of any petition for relief under the Bankruptcy Code." *Id.* at § 1.1(b). "Proceeds" are defined to include "[a]ll proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and/or the Bankruptcy Claims." *Id.* at § 1.1(e).

15. Additionally, Holdings filed that certain UCC-1 financing statement, No. 20185058843, with the Secretary of the State of the State of Delaware on June 8, 2018 (the "Delaware UCC-1"), and that certain UCC-1 financing statement, No. 1816406106, with the Office of the Cook County Recorder of Deeds on June 13, 2018 (the "Illinois UCC-1", together with the Delaware UCC-1, the "UCC-1s"). The UCC-1s perfect Holdings' security interest on all of the personal, tangible and intangible property, rights, interests, fixtures and estates then owned or thereafter acquired by the Debtor.

16. On April 9, 2019, a UCC-3 financing statement, No. 1909922140, was filed for Illinois UCC-1, assigning the interests that Holdings holds under the Illinois UCC-1 to LMREC. Further, on April 26, 2023, a UCC-1 financing statement, No. 2311649004, was filed to continue the effectiveness of the Illinois UCC-1 for the additional period provided by the applicable law.

17. On April 4, 2019, a UCC-3 financing statement, No. 20192329410, was filed for the Delaware UCC-1, assigning the interests that Holdings holds under the Delaware UCC-1 to LMREC. Further, on May 8, 2023, a UCC-1 financing statement, No. 20233453486, was filed to continue the effectiveness of the Delaware UCC-1 for the additional period provided

by the applicable law (these additional UCC financing statements, together with the UCC-1s, the Loan Agreement, the Note, the Mortgage, the Assignment of Rents, and all other documents executed and/or delivered in connection with the Loan, the "Loan Documents").

18. True and correct copies of all the UCC financing statements are attached hereto as **Exhibit F**.

19. As of the Petition Date, the Debtor owed LMREC $27,307,105 under the Loan Documents.

20. The Debtor and ReloShare, Inc. ("ReloShare"), a Delaware corporation, entered into that certain Shelter Use and Occupancy Agreement (the "City Contract"), dated as of November 29, 2023. ReloShare is in the business of identifying space in the City of Chicago that is suitable for use as temporary housing for housing insecure individuals (the "Shelter Users") and for arranging to provide shelter and services to the Shelter Users.

21. Pursuant to the Loan Agreement, all Material Contracts and Material Leases are subject to the Lender's prior review and approval. Loan Agreement § 5.1.22, 5.1.26(a). In breach of the Loan Agreement, the Debtor did not seek LMREC's prior approval of the City Contract. In the Declaration of Michael A. Collier in Support of First Day Motions (D.I. 18) (the "First Day Declaration"), Mr. Collier states that the City Contract has been extended to April 2025. The Debtor did not seek LMREC's prior approval of this extension, also in breach of the Loan Agreement.

## ARGUMENT

**A.  All the Debtor's cash and proceeds of other property, including rents, are LMREC's cash collateral.**

22. The Debtor's sole source of revenue is rents under the City Contract. Thus, all the Debtor's existing cash and future cash receipts constitute LMREC's cash collateral.

23. Section 363(a) of the Bankruptcy Code defines "cash collateral" broadly to include, among other things, cash, cash proceeds of other collateral, and rents and profits from property, including specifically any rents and other payments received for the use and occupancy of hotels and other lodging facilities:

> In this section [363], "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

24. Importantly, the definition of "cash collateral" extends to cash, cash proceeds, rents, and the other items enumerated in section 363(a) "whenever acquired" and "whether existing before or after the commencement of a case under this title", and so extends to postpetition receipts of rents and other cash proceeds. *Id.* Indeed, the legislative history of section 363(a) makes clear Congress's intent in this regard:

> The definition [of cash collateral] is not restricted to property of the estate that is cash collateral on the date of the filing of the petition. Thus, if 'non-cash' collateral is disposed of and the proceeds come within the definition of 'cash collateral' as set forth in this subsection, [then] the proceeds would be cash collateral as long as they remain subject to the original lien on the 'non-cash' collateral under section 552(b). To illustrate, rents received from real property before or after the commencement of the case would be cash collateral to the extent that they are subject to a lien.

S. Rep. No. 95-989, at 55 (1978).

25. Though section 552(a) of the Bankruptcy Code generally renders unenforceable after-acquire property clauses in prepetition security agreements, section 552(b) of

8

the Bankruptcy Code creates a broad exception for proceeds of collateral, including rents. As it relates specifically to rents, section 552(b)(2) of the Bankruptcy Code provides, subject to exceptions not relevant here, that:

> if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(2). Section 552(b)(2) works in tandem with section 363(a) to bring within the definition of cash collateral all rents and similar charges related to real property—whenever acquired, whether pre or postpetition—provided that the secured party and the debtor are party to a security agreement that covers the property and the rents and other charges.

26. LMREC and the Debtor are parties to such a security agreement that "extends to property of the debtor acquired before the commencement of the case" and "to amounts paid as rents . . . [and] other payments for use and occupancy of rooms and other public facilities in hotels, motels, or other lodging properties . . . ." *Id.* As described above, the Mortgage, Assignment of Rents, and other Loan Documents grant LMREC first-priority perfected and continuing security in, among other things, the Property, all the Debtor's personal property, and all associated Leases and Rents.[3] And, under section 363(a) of the Bankruptcy Code, cash

---

[3] Under Illinois law, "[i]f an instrument assigning the interest of the assignor in rents arising from the real property described in the instrument is recorded, pursuant to this Act, in the county in which the real property is situated, then the interest of the assignee in those rents is perfected upon that recordation without the assignee taking any other affirmative action." 765 Ill. Comp. Stat. Ann. § 5/31.5(b). As discussed above, the Mortgage assigns to Holdings the Debtor's interest in rents

9

collateral clearly includes rents and other proceeds of collateral. The Debtor does not argue that it has any other source of unencumbered cash or income apart from collection of rents or other proceeds of the property and the Debtor's other property constituting LMREC's collateral. Accordingly, all the Debtor's current and future cash constitutes LMREC's cash collateral.

**B.     The Debtor cannot use LMREC's cash collateral without consent or Court approval, and LMREC does not consent.**

27.     As a secured creditor and holder of the Mortgage and Assignment of Rents, LMREC has two distinct security interests: a security interest in the property and a separate security interest in the rents. *Stearns*, 1998 WL 661071, at *5; *Travelers Ins. Co. v. River Oaks Ltd. P'Ship*, 166 B.R. 94, 97 (E.D. Mich. 1994) ("[The secured party] has two distinct security interests; it holds a mortgage on the apartment project, and a perfected security interest in rents. . . . Each of these interests must be adequately protected."). Thus, the Court is required to make an independent determination as to whether LMREC's security interest in the rents—*i.e.*, each dollar of revenue received by the Debtor under the City Contract—is adequately protected.

28.     Section 363(c)(2) of the Bankruptcy Code prohibits the Debtor's use of this cash collateral "unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section [363 of the Bankruptcy Code.]" 11 U.S.C. § 363(c)(2). LMREC does not consent to the Debtor's proposed use of its cash collateral. Accordingly, the Debtor must obtain Court approval for its use of cash collateral.

---

arising from the Property as described in the Mortgage, and the Mortgage and the subsequent Assignment thereof to LMREC were duly recorded; therefore, LMREC's interest in the Rents is duly perfected.

10

### C. The Debtor has not met its burden of proving that LMREC's interest in cash collateral is adequately protected.

#### i. The Debtor bears the burden of proving adequate protection.

29. Where a debtor has not obtained the consent of each entity with an interest in cash collateral, the debtor is required to provide adequate protection of each such interest. 11 U.S.C. § 363(c)(2), (e). The debtor bears the burden of proving adequate protection. *Id.* § 363(p)(1); *see also In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (debtor bears burden of establishing adequate protection is being provided for use of lender's cash collateral); *In re Energy Partners, Ltd.*, 409 B.R. 211, 235- 37 (Bankr. S.D. Tex. 2009) (denying use of cash collateral based on debtor's failure to demonstrate the secured creditor was adequately protected).

30. The Bankruptcy Code does not define adequate protection, but section 361 provides examples of adequate protection, including (1) cash payments, (2) additional liens, and (3) other relief, other than granting an administrative expense claim, that will result in realization of the indubitable equivalent of the entity's interest in the debtor's property. *See* 11 U.S.C. § 361. "The last possibility is regarded as a catch all, allowing courts discretion in fashioning the protection provided to a secured party. Therefore, a determination of whether there is adequate protection is made on a case by case basis." *Swedeland*, 16 F.3d at 564.

31. Examples of adequate protection that courts have found acceptable include a substantial "equity cushion" in the value of the property subject to the security interest, third-party guarantees, or new collateral. *See id*. Regardless of its form, adequate protection "should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights." *Id.* (citation omitted). "Whether protection is adequate depends directly on

11

how effectively it compensates the secured creditor for loss of value" caused by the debtor's use, sale, or lease of the property, or the imposition of the automatic stay. *Id.* (citation and quotation omitted). The Third Circuit has stated that the adequate protection provided should give a secured creditor the same level of protection it would have had absent the debtor's postpetition use, sale, or lease of the property. *See id.* (citation omitted).

32. The Third Circuit has cautioned that bankruptcy courts in this circuit must require that adequate protection be demonstrated "tangibly" and noted that "Congress did not contemplate that a creditor could find its priority position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects." *Id.* at 567 ("We cannot close this portion of our opinion without pointing out that what happened here is quite disturbing . . . We trust that in the future bankruptcy judges in this circuit will require that adequate protection be demonstrated more tangibly than was done in this case.").

      **ii.** **The Debtor cannot meet its burden of proving that LMREC's interest in cash collateral is adequately protected.**

33. The Debtor has completely failed to meet its burden of demonstrating adequate protection for the use of LMREC's cash collateral. The Debtor has offered nothing to protect LMREC from the deterioration in its cash collateral except for a replacement lien upon all assets of the Debtor and all hereafter-acquired assets of the Debtor. Cash Collateral Motion ¶ 20. But the Debtor effectively has a single asset and its appurtenant rights:[4] real property and associated improvements and personalty, including the City Contract, rents, and other proceeds. All are already subject to LMREC's lien under the Mortgage, other Loan Documents, applicable

---

[4] LMREC reserves the right to argue that this case should be designated a single asset real estate case.

nonbankruptcy law, and section 552(b) of the Bankruptcy Code.  In other words, the Debtor is seeking to provide LMREC what it already has, albeit now at a subordinated position and with continued deterioration of its collateral throughout the chapter 11 case.[5]

34. As this court and numerous others have recognized, the replacement liens the Debtor offers in existing collateral are illusory and do not constitute adequate protection. *See In re LTAP US, LLLP*, No. 10-14125 KG, 2011 WL 671761, at *3 (Bankr. D. Del. Feb. 18, 2011) (holding that "[p]roviding [the secured lender] with a replacement lien on assets against which it already has a lien is illusory"); *see also In re Las Torres Dev., LLC*, 413 B.R. 687, 696–97 (Bankr. S.D. Tex. 2009) (holding that it was "disingenuous" to offer replacement lien on postpetition rents because lender already had lien on rents).  "Where, however, there is a specific assignment of rents given as security [as is the case here], a diversion of *any portion of the rents* to a party other than the secured party is clearly a diminution of the secured party's interests in the assignment of rents portion of the security. . . The secured party has a security interest in the full amount of the future rents.  *Therefore, this Court cannot accept that the use of future rents to replace the expenditure of the prior months rents somehow provides adequate protection for the secured party*." *River Oaks*, 166 B.R. at 99 (emphasis added); *see also In re Buttermilk Towne Center, LLC*, 442 B.R. 558, 564-67 (BAP 6th Cir. 2010); *Hari Ram, Inc. v. Magnolia Portfolio (In re Hari Ram, Inc.)*, 507 B.R. 114, 125 (Bankr. M.D. Pa. 2014) ("Unlike other forms of cash collateral, a pre-petition security interest in hotel room revenues continues to attach to post petition revenues. 11 U.S.C. §

---

[5] The Debtor has been inconsistent in the Cash Collateral Motion as to what adequate protection it will provide, stating that there will be "payment of an amount equal to any diminution in value of the Lender's collateral," *id.* at ¶20, but then listing as $0 the adequate protection payments for LMREC in the Budget.

552(b).  Under these circumstances, *the offer of a replacement lien on the post-petition rents is meaningless because the creditor already has a lien on these assets*.") (emphasis added).

35. This is precisely what the Debtor is attempting to do in this case.  The Debtor is pointing to the fact that postpetition rents, which are already the collateral of LMREC, will "replenish" the cash collateral the Debtor is spending.  But this theory of adequate protection is incorrect.  Every dollar the Debtor consumes is a dollar that is not being paid to LMREC and the loan obligations.  This plainly does not constitute adequate protection.  *Id*.; *In re Stearns*, 1998 WL 661071, at *5; *Putnal*, 489 B.R. at 291.

36. There is also no evidence regarding the nature and existence of "hereafter-acquired assets" and whether such assets would be sufficient to adequately protect the diminution of LMREC's interest in the Cash Collateral resulting from Debtor's use.  Cash Collateral Motion, ¶ 20.  And the Debtor does not even attempt to argue that there is an equity cushion in the Mortgaged Property, instead stating in the First Day Declaration that the Mortgaged Property's value "is likely to be maximized via one of the following paths[:]" an unidentified refinancing or sale to a presently unidentified and unknown buyer.  First Day Declaration, ¶ 23.  This is precisely the type of flimsy evidence that the Third Circuit has stated is insufficient to demonstrate adequate protection.

## CONCLUSION

37. For the foregoing reasons, LMREC respectfully requests the Court deny the Debtor's proposed used of cash collateral except for any use to the extent necessary to protect and preserve the value of the property and the individuals presently residing in the property that are authorized by LMREC in writing.

**RESERVATION OF RIGHTS**

38. LMREC fully reserves its rights to raise further or other objections to the Cash Collateral Motion and all other first day motions, including at any hearing thereon, to seek relief from the automatic stay, and to seek dismissal of this case.

| | |
|---|---|
| Dated: April 30, 2024<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br> /s/ Curtis S. Miller<br>Curtis S. Miller (No. 4583)<br>Matthew B. Harvey (No. 5186)<br>Scott D. Jones (No. 6672)<br>1201 North Market Street, Suite 1600<br>Wilmington, DE 19801<br>Telephone:  (302) 658-9200<br>Facsimile:   (302) 658-3989<br>Email: cmiller@morrisnichols.com<br>            mharvey@morrisnichols.com<br>            sjones@morrisnichols.com<br><br>*Counsel for LMREC IV NOTE HOLDER, INC.* |