**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| TREMONT CHICAGO, LLC,[1] | Case No. 24-10844 (LSS) |
| Debtor. | **Hearing Date: May 29, 2024, at 10:00 a.m. (ET)**<br>**Objection Deadline: May 22, 2024, at 4:00 p.m. (ET)** |

**MOTION OF LMREC IV NOTE HOLDER, INC. FOR RELIEF FROM THE
AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE
OR, IN THE ALTERNATIVE, TO DISMISS THE BANKRUPTCY CASE FOR CAUSE
PURSUANT TO SECTION 1112 OF THE BANKRUPTCY CODE**

LMREC IV Note Holder, Inc. ("LMREC"), as senior secured lender to the Debtor,
hereby moves (the "Motion") for entry of an order, substantially in the form attached hereto as
**Exhibit A**, lifting the automatic stay pursuant to section 362(d) of title 11 of the United States
Code (the "Bankruptcy Code") or, in the alternative, entry of an order, substantially in the form
attached hereto as **Exhibit B**, dismissing Tremont Chicago, LLC's (the "Debtor") chapter 11 case
pursuant to section 1112(b) of the Bankruptcy Code.  In support of the Motion, LMREC submits
the *Declaration of Bryan Younge of Newmark Valuation & Advisory Regarding Appraisal of the
Tremont Hotel* (the "Younge Declaration"), attached hereto as **Exhibit C**, and the *Declaration of
Lukas Mehring* (the "Mehring Declaration"), attached hereto as **Exhibit D**.  In further support of
the Motion, LMREC respectfully states as follows:

---

[1]    The last four digits of the Debtor's federal tax identification number are 5403. The location of the
Debtor's operations is 100 E. Chestnut St., Chicago, IL 60611.

## PRELIMINARY STATEMENT

1.    The Debtor filed its bankruptcy petition in bad faith and solely to take advantage of the automatic stay, without any legitimate reorganizational purpose or any ability to confirm a plan.  These facts warrant immediate relief from the automatic stay or dismissal of the Debtor's chapter 11 case.

2.    Stay relief under section 362(d)(2) of the Bankruptcy Code is mandatory because the Debtor has no equity in its property or the associated rents, and the property and rents are not necessary for a reorganization because no reorganization is possible.  The Debtor has been in default under the Loan Documents (defined below) since October 2020, and owes LMREC, its senior secured lender and largest unsecured creditor, over $27,572,176.  As explained by Bryan Younge, an expert appraiser from Newmark Valuation & Advisory, the Property's value as of the petition date was $18,400,000 leaving LMREC with a deficiency claim of approximately $9,172,176.  The Debtor plainly has no equity in the Property.

3.    Moreover, LMREC's $9,172,176 deficiency claim dwarfs the other general unsecured claims against the Debtor and, under binding Third Circuit precedent, must be classified with the other general unsecured claims under a plan.  When LMREC rejects the plan (as it intends to do), the Debtor will be unable to satisfy section 1129's confirmation requirements.  These two facts—lack of equity in the property and rents and an inability to confirm a plan—make stay relief *mandatory* under section 362(d)(2) of the Bankruptcy Code.

4.    Alternatively, the Court should dismiss the Debtor's chapter 11 case as having been filed in bad faith.  At the first day hearing the Debtor's principal, Michael Collier, admitted on cross-examination that the bankruptcy petition was filed to stay the hearing on LMREC's motion to appoint receivers in the pending foreclosure proceedings.  As such, the sole

reason this bankruptcy was filed was for the Debtor to obtain a litigation advantage in a two-party dispute with LMREC. This is indicative of a bad faith filing warranting the dismissal of this chapter 11 case.

5.     Mr. Collier also testified that notwithstanding the suggestion in his first day declaration, the Debtor has no proposals, term sheets or letters of intent, let alone definitive agreements, to refinance LMREC's loan or sell the Property. Mr. Collier, moreover, was unaware that the Debtor needed to budget for administrative expenses that accrue during a chapter 11 case and, worse yet, the Debtor cannot pay those expenses because it has no DIP financing and no ability to adequately protect LMREC's interest in cash collateral.

6.     With no equity in the Property, no confirmable plan, no replacement financing for the Property or the chapter 11 case, no access to cash collateral to fund its case, and no prospect of selling the Property for more than the liens against it, there simply is no value or benefit that the Debtor will create or preserve through this chapter 11 case.

7.     For these reasons and the reasons discussed below, the Court should grant relief from stay or dismiss the Debtor's chapter 11 case.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Local Rule 9013-1(f), LMREC consents to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 362(d)(2) and 1112(b) of the Bankruptcy Code.

**BACKGROUND**

I.      **LMREC and the Debtor Entered into the Loan Agreement that Granted LMREC Valid, Perfected, First-Priority Liens on all the Debtor's Assets.**

10.     The Debtor and LMREC IV Holdings I, Inc. ("Holdings"), entered into that certain Loan Agreement (the "Loan Agreement"), dated as of June 7, 2018, under which Holdings agreed to lend $19,425,000 (the "Loan") to the Debtor.  At the same time, the Debtor executed that certain Promissory Note dated June 7, 2018, payable to Holdings in the face amount of $19,425,000 (the "Note").  Copies of the Loan Agreement and Note are attached to the Mehring Declaration as Exhibit 1 and Exhibit 2, respectively.

11.     Holdings subsequently assigned its interests under the Loan Agreement and other Loan Documents (defined below) to LMREC, through that certain Assignment of Mortgage, Security Agreement and Financing Statement and Other Loan Documents, by and between Holdings and LMREC, executed and recorded with the Cook County Recorder of Deeds on April 10, 2019, as Document No. 1910057108 (the "Assignment of Loan Documents"), and attached to the Mehring Declaration as Exhibit 3.

12.     LMREC's collateral for the Loan consists of all the Debtor's assets, including: the Tremont Hotel, 100-108 E. Chestnut Street & 838 N. Ernst Court, Chicago, Illinois 60611 (the "Property") and all improvements, equipment, and fixtures thereon; all the Debtor's personal property, including all contracts, leases, and rents; all insurance policies; all trademarks, general intangibles, and accounts; and all proceeds of the foregoing.  *See* Mortgage § 1.1.

13.    To secure the Loan, the Debtor and LMREC are also party to that certain Mortgage, Security Agreement and Financing Statement dated June 7, 2018, recorded with the Cook County Recorder of Deeds on June 13, 2018, as Document No. 1816406104 (the "Mortgage"), and attached to the Mehring Declaration as Exhibit 4.  The Mortgage grants LMREC a perfected first-priority security interest in the Property and secures the Loan debt evidenced by the Note.  The Property consists of the real property and improvements described in the Mortgage. *See* Mortgage Ex. "A", at 1.

14.    The Mortgage also creates and perfects a security interest in, among other things, the "Leases" and "Rents" associated with the Property.  "Leases" are defined to include "[a]ll leases . . . or other agreements . . . pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, by or on behalf of [the Debtor], . . . whether before or after the filing by or against [the Debtor] of any petition for relief under [the Bankruptcy Code] . . . ."  Mortgage § 1.1(i).  "Rents" are defined to include "all rents . . . , rent equivalents, . . . income, receivables, receipts, revenues . . . received by or paid to or for the account of or benefit of [the Debtor]. . . from any and all sources arising from or attributable to the Property, . . . whether paid or accruing before or after the filing by or against [the Debtor] of any petition for relief under the Bankruptcy Code . . . ."  *Id.*

15.    The Debtor and LMREC are also party to that certain Assignment of Rents dated June 7, 2018, recorded with the Cook County Recorder of Deeds on June 13, 2018, as Document No. 1816406105 (the "Assignment of Rents"), and attached to the Mehring Declaration as Exhibit 5.

16.    In the Assignment of Rents, as security for the Loan, the Debtor "absolutely and unconditionally assigns and grants" to LMREC the "property, rights, interests and estates, now

owned, or hereafter acquired by [the Debtor]," which includes, among other things, the "Leases", "Rents" and "Proceeds." Assignment of Rents § 1.1. "Leases" are defined to include "all agreements . . . affecting the use, enjoyment or occupancy of the Property . . . whether made before or after the filing by or against [the Debtor] of any petition for relief under [the Bankruptcy Code] . . . ." *Id.* at § 1.1(a). "Rents" are defined to include "[r]ents paid or accruing before or after the filing by or against [the Debtor] of any petition for relief under the Bankruptcy Code." *Id.* at § 1.1(b). "Proceeds" are defined to include "[a]ll proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and/or the Bankruptcy Claims." *Id.* at § 1.1(e).

17.     Additionally, Holdings filed that certain UCC-1 financing statement, No. 20185058843, with the Secretary of the State of the State of Delaware on June 8, 2018 (the "Delaware UCC-1"), and that certain UCC-1 financing statement, No. 1816406106, with the Office of the Cook County Recorder of Deeds on June 13, 2018 (the "Illinois UCC-1", together with the Delaware UCC-1, the "UCC-1s"). The UCC-1s perfect Holdings' security interest in, among other things, all the Debtor's then owned or after acquired personal, tangible and intangible property, rights, interests, fixtures and estates.

18.     On April 4, 2019, a UCC-3 financing statement, No. 20192329410, was filed for the Delaware UCC-1, reflecting the assignment to LMREC of the interests that Holdings holds under the Delaware UCC-1. Thereafter, on May 8, 2023, a UCC-3 continuation statement, No. 20233453486, was timely filed to continue the effectiveness of the Delaware UCC-1 for five years.

19.     On April 9, 2019, a UCC-3 financing statement, No. 1909922140, was filed for Illinois UCC-1, reflecting the assignment to LMREC of the interests that Holdings holds under the Illinois UCC-1. Further, on April 26, 2023, a UCC-3 continuation statement, No. 2311649004,

was filed to continue the effectiveness of the Illinois UCC-1 for five years (these additional UCC financing statements, together with the UCC-1s, the Loan Agreement, the Note, the Mortgage, the Assignment of Rents, and all other documents executed and/or delivered in connection with the Loan, the "Loan Documents").  Copies of the UCC financing and continuation statements are attached to the Mehring Declaration as Exhibit 6.

## II.      Numerous Events of Default Exist Under the Loan Agreement.

20.     The Debtor has been in default under the Loan Agreement since October 2020.  The Debtor has failed to pay amounts due under the Loan Agreement and has also failed to pay the full balance of the Note when it matured on June 1, 2021.  The Debtor also has failed to pay and discharge all claims for labor on the Property which resulted in Mechanical Systems, Inc. ("AMS") filing a Mechanic's Lien Claim on the Property, in breach of the Loan Agreement.  *See* Loan Agreement § 8.1(xii).

21.     Moreover, under the Loan Agreement, all Material Contracts and Material Leases are subject to the Lender's prior review and approval.   Loan Agreement §§ 5.1.22, 5.1.26(a).  The Debtor entered into that certain Shelter Use and Occupancy Agreement (the "City Contract"), dated as of November 29, 2023, with ReloShare, Inc. ("ReloShare").  ReloShare is in the business of identifying space in the City of Chicago that is suitable for use as temporary housing for housing insecure individuals (the "Shelter Users") and arranging to provide shelter and services to the Shelter Users.  In direct violation of the Loan Agreement, the Debtor did not submit the City Contract to LMREC for its prior review and approval before the Debtor executed it.  Apr. 7, 2024 Hr'g Tr. 18:25–19:3 ([Counsel for LMREC:] "Now, when you entered into the city contract on behalf of the debtor, did you seek [LMREC's] prior approval of the city contract? [Mr. Collier:] I did not.").

22.     Similarly, in the *Declaration of Michael A. Collier in Support of First Day Motions* (D.I. 18) (the "First Day Declaration"), Mr. Collier states that the Debtor entered into an addendum to the City Contract (the "Addendum") which has been extended to April 2025.  First Day Decl. ₱ 19.  At the first day hearing, Mr. Collier admitted that he did not seek LMREC's prior approval before extending the City Contract in breach of the Loan Agreement.  Apr. 7, 2024 Hr'g Tr. 19:4–19:19 ([Counsel for LMREC:] "And did you seek [LMREC's] prior consent before entering into [the Addendum]?  [Mr. Collier:] No, I did not.").

### III.     The Debtor Files This Chapter 11 Case During a Hearing on the Appointment of Receivers.

23.     On September 25, 2023, LMREC initiated an action to foreclose on the Property in the Circuit Court of Cook County, Illinois.  While the foreclosure proceedings were pending, on April 4, 2024, LMREC sought emergency relief through a motion for the appointment of designated receivers to allow LMREC to protect the Property due to, among other things: (i) the Debtor's failure to pay for labor performed on the Property; and (ii) the Debtor's failure to pay significant outstanding utility bills, including a utility bill that now exceeds $680,000.  LMREC also was concerned that the Debtor was collecting Rents from the Property without making required payments on the Note or paying for the upkeep and operation of the Property, both of which seriously threatened the value of LMREC's collateral.

24.     On April 22, 2024 (the "Petition Date"), during the hearing on LMREC's receiver motion, the Debtor advised the Illinois Circuit Court and LMREC that it had filed for chapter 11 protection in this Court.

25.     On April 30, 2024, this Court held the first day hearing during which the Court heard argument on the *Preliminary Objection of LMREC IV Note Holder, Inc. to Debtor's Cash Collateral Motion*, (the "Objection") [D.I. 25].  After hearing argument, the Court stated that

it would be open to approving "[a] very discrete, limited use of cash collateral," but not the form of order that was presented by the Debtor.  Apr. 30, 2024 Hr'g Tr. 51:22–52:2.  During a break, the Debtor and LMREC conferred and agreed to limited use of cash collateral related to essential maintenance and operating expenses.  Accordingly, the Court entered an interim order (the "<u>First Interim Order</u>") with an attached budget approving limited use of LMREC's cash collateral until a hearing scheduled for May 9, 2024, where the Court would consider further uses of LMREC's cash collateral absent the parties' agreement.

26.    Before the May 9 hearing the parties agreed to extend the original budget contained in the First Interim Order.  Accordingly, on May 8, 2024, the Court entered a second interim order (the "<u>Second Interim Order</u>") for limited use of LMREC's cash collateral under an extended budget attached to that order.

27.    On May 13, 2024, Newmark Valuation & Advisory issued an expert appraisal of the Property and concluded that the estimated value of the Property as of the Petition Date was $18,400,000.  A true and correct copy of the appraisal report (the "<u>Appraisal Report</u>") is attached to the Younge Declaration as Schedule 1.

28.    As of the Petition Date, the Debtor owed LMREC $27,307,105 under the Loan Documents, broken down as follows.

| Original Principal Balance | $ 19,425,000 |
|---|---|
| Exit Fee | $ 388,500 |
| Interest (9/1/20-9/30/20) | $ 111,289 |
| Interest at the Default Rate (10/1/20-5/15/24) | $ 11,278,702 |
| Outstanding Late Fees | $ 8,029 |
| Partial Payments/Reserve Applications | $ (3,639,345) |
| Total Owed (as of 5/15/2024) | $ 27,572,176 |
| Per Diem Interest[2] | $ 11,554.65 |

Mehring Decl. ¶ 6.

## ARGUMENT

## I.      LMREC is Entitled to Relief from Stay Under 11 U.S.C. § 362(d)(2).

29.     Lifting of the automatic stay is mandatory under section 362(d)(2) of the Bankruptcy Code because the Debtor does not have equity in the Property or Rents and the Debtor has no ability to confirm a plan.

30.     Section 362(d)(2) requires the court to lift or modify the stay if the debtor does not have equity in the property and the property is not necessary for an effective reorganization. *See* 11 U.S.C. § 362(d)(2).  This section "allow[s] creditors to immediately proceed against the property where the debtor has no equity, and it is unnecessary to the reorganization, even where the debtor can provide adequate protection under Section 362(d)(1)." *La Jolla Mortg. Fund v. Rancho El Cajon Assocs.*, 18 B.R. 283, 289-90 (Bankr. S.D. Cal. 1982) (citing *In re San Clemente Estates*, 5. B.R. 605, 610 (Bankr. S.D. Cal. 1980)).  Under section 362(d)(2), the moving party bears the burden of establishing that the debtor lacks equity in the property, and the debtor bears the burden of proving that the property is necessary to an effective reorganization. *See* 11 U.S.C. § 362(g); *Nazareth Nat'l Bank v. Trina-Dee, Inc.*, 731 F.2d 170, 171 (3d Cir. 1984).

---

[2]      Per diem interest amount changes every month.

31.     To establish a lack of equity in property for purposes of section 362(d)(2) of the Bankruptcy Code, a court should "focus[] on a comparison between the total liens against the property and the property's total value." *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 206 (3d Cir. 1995).  Thus, a court need only "subtract[] the total claims from the value of the property. If the value of the claims against a property exceeds the value of the property, the debtor has no equity in the property." *In re Thomas*, 2017 WL 123746, at *2 (Bankr. S.D.N.Y. Jan. 5, 2017); *see also* 3 COLLIER ON BANKRUPTCY, ¶ 362.07[4][a] (16th ed.).

32.     Once a secured creditor has met its *prima facie* burden, the burden then shifts to the debtor, who must demonstrate that the property is necessary to an effective reorganization.  11 U.S.C. § 362(g); *see also In re Ashcraft*, 2024 WL 1986078, at *3 (Bankr. D. Del. May 3, 2024).  "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375–76 (1988) (emphasis in original).  "This means . . . that there must be a reasonable possibility of a successful reorganization within a reasonable time." *Id.* at 376 (internal quotation omitted).

A.      **The Debtor does not have equity in the Property or the Rents.**

33.     "Equity, for the purposes of section 362(d), exists if there is value in property in excess of all the claims secured by that property." *In re Wallace*, 2011 WL 5827623, at *8 (Bankr. D. Idaho Nov. 18, 2011).  As of the Petition Date, the Debtor owes LMREC not less than $27,572,176.  Mehring Decl. ¶ 6.  LMREC has a perfected first-priority security interest in the Property and all Rents attributable to the Property.  *See* Mortgage § 1.1(i); UCC-1's, Assignment of Rents § 1.1.  And the Appraisal Report demonstrates that the petition date value of

11

the Property is $18,400,000.   This means that the Debtor has negative equity in the Property of $9,172,176.   Additionally, as stated above, the Assignment of Rents provides LMREC with a secured interest in all the Rents derived from the Property.   Thus, the Debtor does not have equity in the Rents as LMREC has a perfected first-priority security interest in every dollar of rent that is collected.   *See Wallace*, 2011 WL 5827623, at *8 ("[T]here is no equity in the rents generated from the [] properties as the [creditors] are secured in those rents . . . .").

34.     Accordingly, LMREC has met its burden of demonstrating that the Debtor lacks equity in the Property and the Rents.

> **B.      The Property and Rents are not necessary for an effective reorganization because the Debtor is unable to confirm a plan.**

35.     The Debtor will be unable to confirm a plan because it will be unable to obtain full acceptance of all creditor classes entitled to vote under section 1129(a) of the Bankruptcy Code or achieve a "cram-down" pursuant to section 1129(b) of the Bankruptcy Code.

36.     The Third Circuit's decision in *John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.*, 987 F.2d 154 (3d Cir. 1993) is directly on point and demonstrates that the Debtor cannot confirm a plan in this case and that relief from stay must be granted.   In *John Hancock*, the debtor's principal asset was a commercial real estate park that was subject to a $5.9 million secured claim.   *See id.* at 156.   The property was valued at $2.2 million, and therefore, the debtor lacked equity in the property.   *See id.*

37.     In response to the lender's request for relief from stay under section 362(d)(2), the debtor argued that although it lacked equity in the property, the property was necessary for a successful reorganization.   *See id.*   The lender argued that no reorganization was achievable because the lender's $3.7 million unsecured deficiency claim would control the vote of the debtor's unsecured creditor class, and so when the lender rejected the plan (as it intended to

do), the debtor would have no impaired accepting class to confirm the plan.  *See id.*  In response, the debtor argued that it could achieve an impaired accepting class by separately classifying the lender's deficiency claim thereby assuring that the lender's rejecting vote did not cause the unsecured creditor class to reject the plan.  *See id.*  The bankruptcy court agreed with the debtor that this classification scheme may be possible and therefore denied the lender's request for relief from stay.  *See id.*  The district court affirmed.  *See id.* at 156–57.

38.     On further appeal, the Third Circuit reversed, ruling that the debtor's proposed classification scheme—and the reasons for it—were invalid as a matter of law and, accordingly, "since we see no reasonable possibility of confirmation, we hold that the lift stay order should have been granted."  *Id.* at 162.

39.     This case is indistinguishable from *John Hancock*.  LMREC's deficiency claim totals $9,172,176.  The total amount of the general unsecured creditors listed on the *List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* [D.I. 5] is approximately $2,158,668 (plus three claims where the amount of the general unsecured claim is unknown)—and there appear to be no other material unsecured creditors because the Debtor listed only 14 creditors in the *Verification of Creditor Matrix* [D.I. 3].  Under *John Hancock*, LMREC's deficiency claim and the other general unsecured claims must be placed into the same class.  *See John Hancock*, 987 F.2d 154.  Thus, if LMREC rejects the Debtor's plan (as it will), then the Debtor is unable to confirm the plan under either section 1129(a) or (b) of the Bankruptcy Code.

40.     Because the Debtor cannot confirm a plan without LMREC's agreement, the Property and the Rents derived from the Property are not necessary to a plan of reorganization. As a result, relief from stay under section 362(d)(2) of the Bankruptcy Code should be granted.

## II.        Cause Exists Under Bankruptcy Code Section 1112(b) to Dismiss Debtor's Chapter 11 Case.

41. In the alternative, the Court should dismiss this case pursuant to section 1112(b) of the Bankruptcy Code as having been filed in bad faith.  It is well-established in the Third Circuit that "cause" exists under section 1112(b) where a bankruptcy petition is filed in "bad faith." *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999).  "Good faith is a predicate to the right to file a petition in bankruptcy, as only the honest but unfortunate debtor is eligible to avail itself of the protections afforded by the Bankruptcy Code." *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 297 (Bankr. D. Del. 2011) (internal quotations omitted).  The purpose of the good faith requirement is to "legitimize the delay and costs imposed upon parties to a bankruptcy" and deter debtors from abusing the equitable tools available in bankruptcy for the ulterior motive of "delay[ing] creditors without benefiting them in any way[.]"  *SGL Carbon*, 200 F.3d at 161-62, 165-66 (quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Co. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)); *see also In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004) ("At its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purpose of bankruptcy[.]").

42. When a party in interest moves to dismiss a case under section 1112(b) of the Bankruptcy Code, the debtor bears the burden of establishing that its case was filed in good faith. *Integrated Telecom*, 384 F.3d at 118 (citing *SGL Carbon Corp.*, 200 F.3d at 159-62).

43. The good faith analysis generally requires an inquiry examining the "totality of the facts and circumstances [to] determine where a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." *Integrated Telecom*, 384 F.3d at 118 (citing *SGL Carbon*, 200 F.3d 159-62).  The inquiry is primarily an objective analysis into whether the

filing is abusive but "the subjective intent of the debtor may play a role in a court's determination of good faith." *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 620 n.8 (3d Cir. 2009).

44.     In the Third Circuit, courts focus on two factors to determine whether a bankruptcy petition is filed in good faith: "(1) whether the petition serves a valid bankruptcy purpose, *e.g.*, by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage." *Integrated Telecom*, 384 F.3d at 120.

45.     To serve a valid bankruptcy purpose, a petition "must seek to create or preserve some value that would otherwise be lost–not merely distributed to a different stakeholder–outside of bankruptcy." *Integrated Telecom*, 384 F.3d at 129.  Petitions filed with "the primary intent of obstructing creditors without a reorganizational purpose or an ability to reorganize are filed in bad faith." *In re Schaffer*, 597 B.R. 777, 792 (Bankr. E.D. Pa. 2019), *aff'd*, 606 B.R. 228 (E.D. Pa. 2019), *aff'd*, 2020 WL 2529371 (3d Cir. Jan. 24, 2020).  Good faith requires "a reasonable expectation on the part of the debtor that a successful reorganization can be accomplished." *Id.*

**A.     The Debtor filed its petition in bad faith because it lacks a valid bankruptcy purpose.**

46.     There is no valid bankruptcy purpose for this chapter 11 case.  The Debtor is unable to confirm a plan and has not pointed to any value that will be created or preserved by virtue of this case.  To the contrary, because of the Debtor's inability to provide LMREC with adequate protection, the Debtor's liabilities, including administrative claims for professional fees, are increasing with no ability to be paid, making the Debtor worse—not better—off than when it filed its petition.  Further, there is no reasonable expectation of a successful reorganization.  As detailed above, the Debtor cannot reorganize if LMREC rejects its plan, which LMREC intends to

do.  Without an ability to successfully reorganize, the Debtor's petition lacks the requisite good faith.

47.     Courts in the Third Circuit have also considered the factors articulated in *In re Primestone Inv. Partners, L.P.,* 272 B.R. 554, 557 (D. Del. 2002), and its progeny to evaluate whether there is a valid bankruptcy purpose for a single asset debtor.  The *Primestone* factors are: (1) single asset case; (2) few unsecured creditors; (3) no ongoing business or employees; (4) petition filed on the eve of foreclosure; (5) two party dispute that can be resolved in pending state court action; (6) no cash or income; (7) no pressure from non-moving creditors; (8) previous bankruptcy petitions; (9) prepetition conduct was improper; (10) no possibility of reorganization; (11) debtor formed immediately prepetition; (12) debtor filed solely to create automatic stay; and (13) subjective intent of debtor.  The focus of these factors is whether the debtor sought to achieve objectives outside the scope of the bankruptcy laws.  *Id.*  As in *Primestone*, the majority of these factors are present in this case, and in particular the most significant ones establish that this case is "patently abusive" and should be dismissed.

48.     To start, *Primestone* factors one and two support dismissal.  Although the Debtor did not designate this case as a single asset real estate case on its petition, it is one because the Debtor's assets consist solely of the Property and the revenue generated from the Property.[3] Similarly, the Debtor has very few creditors.  The Debtor listed a total of only fourteen creditors on its *List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* [D.I. 5], seven with claims less than $20,000 and three with "unknown" claim amounts.  Thus, *Primestone*

---

[3]     LMREC reserves the right to seek to designate this bankruptcy case as a single asset real estate case.

factors one and two both support dismissal because the Debtor is a single assets real estate debtor and has few creditors.

49.     The third and sixth *Primestone* factors weigh in favor of dismissal because while the Debtor has executed the City Contract and currently generates some income, the City Contract is short in duration and was entered into in violation of the terms of the Loan Agreement. *See* Loan Agreement §§ 5.1.22, 5.1.26(a) (requiring the Debtor to have obtained LMREC's approval to enter into the City Contract, which the Debtor did not do).  Moreover, the Debtor is no longer engaged in the hotel business, having converted the Property into a homeless shelter, again in contravention of the Loan Agreement.  And in connection with that conversion, the Debtor laid off the majority of its employees and now operates with a skeleton crew of only thirteen employees to essentially maintain the building.  Thus, factors three and six are present because the Debtor has only limited remaining employees and limited income for a short duration.

50.     The fourth, fifth, twelfth and thirteenth *Primestone* factors, all strongly support dismissal.  The Debtor filed its bankruptcy petition *during* the receivership hearing.  The Debtor's intent in doing so was clear:  It wanted to stay the two-party dispute between LMREC and the Debtor that was properly proceeding in Illinois state court.  *See* Apr. 30, 2024 Hr'g Tr. 20:7-13 ([Counsel to LMREC:] "[W]as th[e] petition filed to stay the receivership proceeding? [Mr. Collier:] I believe so.").  Accordingly, *Primestone* factors four, five, twelve and thirteen all favor dismissal because this case was filed during the receivership hearing in the foreclosure action to stay a two-party dispute that was pending in state court and was intended solely to create the automatic stay.

51.    Additionally, the seventh factor favors dismissal because, there has been no evidence that the Debtor filed bankruptcy because it was subject to pressure from creditors other than LMREC.

52.    The ninth factor similarly supports dismissal because the Debtor's prepetition conduct in respect of the Property and Loan Agreement was improper.  *See In re California Palms, LLC*, 2020 WL 728788, at *6 (Bankr. N.D. Ohio Jan. 14, 2020 (holding that pre-petition conduct should not be looked at individually rather the conduct should be "taken as a whole" when evaluating).  The Debtor has been in breach of the Loan Agreement since October 2020.  Further, the Debtor entered into the City Contract, and an extension of the City Contract, without LMREC's prior review and approval, and diverted the Rents, which are LMREC's cash collateral, to pay its bankruptcy counsel and for other uses, all in direct contravention of the Loan Agreement.  Thus, the ninth factor also favors dismissal.

53.    Finally, factor ten supports dismissal because the Debtor has no prospect of reorganizing for the reasons discussed above.  Thus, this factor also weighs strongly in favor of dismissal.[4]

54.    For these reasons, the *Primestone* factors weigh heavily in favor of a finding of bad faith and dismissal.  *Primestone*, 272 B.R. 548.

55.    As detailed above, the Debtor filed the chapter 11 case in bad faith as it does not have a valid bankruptcy purpose.  Accordingly, the chapter 11 case should be dismissed.

---

[4]    Factors eight and eleven are not present, but are outweighed by the presence of the other factors.

**B. The petition was filed in bad faith because the primary purpose was to gain a tactical litigation advantage in the foreclosure proceeding.**

56.      Not only is this chapter 11 case a bad faith filing because it serves no valid bankruptcy purpose, but the totality of the circumstances reveal that this case is nothing more than a bad faith litigation tactic.

57.      Courts repeatedly hold that the filing of a chapter 11 petition "merely to obtain tactical litigation advantages is not within the legitimate scope of the bankruptcy laws[.]" *Integrated Telecom*, 384 F.3d at 120 (quoting *SGL Carbon*, 200 F.3d at 165).   In that regard, "[w]here the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith." *SGL Carbon*, 200 F.3d at 165.

58.      Although "chapter 11 filings triggered by state court proceedings do not *per se* constitute bad faith filings, where a debtor's reorganization effort involves essentially a two-party dispute which can be resolved in state court, and the evidence demonstrates that the filing for bankruptcy relief is intended to frustrate the legitimate efforts of creditors to enforce their rights against the debtor, a finding that the petition was filed in bad faith is generally warranted." *Schaffer*, 597 B.R. at 791. *See also In re GVS Portfolio I B, LLC*, 2021 WL 2285285, at *9 (Bankr. D. Del. June 4, 2021) ("[T]he fact that this case was filed immediately before foreclosure in order to obtain the automatic stay coupled with the two-party nature of the dispute . . . supports the finding that this case was filed by the [d]ebtor for a tactical advantage  . . . in the New York state court litigation that resulted in a foreclosure sale . . .").

59.      The Debtor has been in default under the Note since October 2020.  LMREC has consistently worked with the Debtor in the hopes of avoiding foreclosing on the Property.  But after years of the Debtor's unsuccessful efforts to remedy the defaults under the Loan Agreement

combined with new material defaults, LMREC exercised its rights under the Loan Documents, initiated the foreclosure proceedings and subsequently sought the appointment of receivers to prevent immediate and ongoing harm to the Property.

60.     The Debtor filed its bankruptcy petition in Delaware in the middle of the receivership hearing to stay and forestall the hearing.  *See* Apr. 30, 2024 Hr'g Tr. 20:7-13 ([Counsel to LMREC:] "[W]as th[e] petition filed to stay the receivership proceeding?  [Mr. Collier:] I believe so.").  This fact alone establishes that the Chapter 11 Case was filed as a litigation tactic.

61.     For all these reasons, the Court should dismiss the Chapter 11 Case.

**C.     The Debtor should be barred from refiling a bankruptcy petition until the conclusion of the foreclosure proceeding.**

62.     Where cause exists, a bankruptcy court may use its equitable powers to bar a debtor from refiling a bankruptcy petition.  *See* 11 U.S.C. § 105(a) ("The court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."); *id.* § 349(a) ("Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not . . . prejudice the debtor with regard to the filing of a subsequent petition[.]"); *In re Scarborough-St. James Corp.*, 2015 WL 5672628, at *3 (Bankr. D. Del. Sept. 24, 2015) (dismissing case for bad faith filing and imposing temporary bar to refiling to enable parties to obtain adjudication of litigation claims in district court); *JER/Jameson*, 461 B.R. at 304 (dismissing case "with prejudice" under section 349(a) based on debtor's bad faith).

63.     The Debtor cannot demonstrate that the chapter 11 case was commenced in good faith, and LMREC should not be further prejudiced by a subsequent bankruptcy filing in this district or in another district before the foreclosure proceeding has concluded.  Therefore, LMREC

requests that this Court dismiss the chapter 11 case and bar the Debtor from refiling a bankruptcy petition until the foreclosure proceeding has concluded.

64.     For all these reasons, the chapter 11 case should be dismissed as it was filed in bad faith without a valid bankruptcy purpose and solely as a litigation tactic.

## REQUEST FOR WAIVER OF 14-DAY STAY

65.     LMREC requests that the Court waive the 14-day stay requirement of Bankruptcy Rule 4001(a)(3) so that LMREC can immediately petition the Circuit Court of Cook County, Illinois to schedule a hearing and reconvene arguments in the receivership hearing.  Any further delay will subject LMREC's collateral to unnecessary and further value erosion.

## NOTICE

66.     LMREC will serve a copy of this Motion on (a) the U.S. Trustee; (b) counsel for the Debtor; (c) the official committee of unsecured creditors, or its counsel, if known; and (d) any other parties required by Local Rule 2002-1(b).  In light of the nature of the relief requested herein, LMREC respectfully submits that no further notice is necessary.

## CONCLUSION

67.     For the foregoing reasons, LMREC respectfully requests the Court (i) enter an order (a) substantially in the form attached hereto as **Exhibit A** granting LMREC immediate relief from the automatic stay, or, in the alternative, (b) substantially in the form attached hereto as **Exhibit B** dismissing the chapter 11 case, and (ii) grant all such other and further relief which is just and proper under the circumstances.

Dated: May 15, 2024                    **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
      Wilmington, Delaware

   */s/ Curtis S. Miller*
Curtis S. Miller (No. 4583)
Matthew B. Harvey (No. 5186)
Scott D. Jones (No. 6672)
1201 North Market Street, Suite 1600
Wilmington, DE 19801
Telephone:  (302) 658-9200
Facsimile:   (302) 658-3989
Email: cmiller@morrisnichols.com
       mharvey@morrisnichols.com
       sjones@morrisnichols.com

*Counsel for LMREC IV Note Holder, Inc.*